IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HEIWA SALOVITZ | § | |
| | § | |
| V. | § | A-14-CV-823-LY |
| | § | |
| UBER TECHNOLOGIES, INC. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are: Plaintiff's Motion to Remand and Memorandum in Support Thereof, (Dkt. No. 6); Defendant's Response (Dkt. No. 7); and Plaintiff's Reply (Dkt. No. 13). The District Court referred the above-motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I.  GENERAL BACKGROUND**

Plaintiff Heiwa Salovitz ("Salovitz"), a Texas resident, has a physical disability and uses a wheelchair for mobility. Salovitz is also a member of ADAPT of Texas, a grass-roots disability rights organization made up primarily of people with disabilities. Among other things, ADAPT has worked to ensure that transportation services including urban, intercity and taxi transportation are accessible to people with disabilities.

Defendant Uber Technologies, Inc. ("Uber"), a Delaware corporation with its principal place of business in San Francisco, California, is a software technology company that provides a smart phone application that matches ride-seekers looking for a car service with car service company

drivers looking for ride-seekers.  A customer seeking a ride must download and log onto the Uber "App."  The App finds the rider via the smart phone's GPS system.  The rider then chooses a car type (e.g., SUV or sedan) and on the next screen taps "Request," which alerts nearby drivers that a ride has been requested.  Uber emphasizes that it "does not employ drivers, own vehicles or otherwise control the means and methods by which a driver chooses to connect with riders."  Response at p.2.  Rather, "[i]t merely provides a platform for people who own vehicles to leverage their skills and personal assets and connect with other people looking to pay for those skills and assets."  *Id.*

On July 15, 2014, Salovitz was at the ADAPT office in Austin, Texas and contacted Uber via the Uber App to request a ride.  Although he did not see a way to request an accessible cab through the App, he nevertheless requested a ride.  When the vehicle arrived, it was not accessible to disabled passengers.  Salovitz asked the driver how he could request an accessible cab from Uber, but the driver stated he did not know how and canceled the ride request.  Salovitz alleges that "[b]y refusing to provide access to its transportation service or a way to call an accessible vehicle, Defendant has refused to accept as passengers people with disabilities who use wheelchairs like Mr. Salovitz..."  Plaintiff's Original Petition at ¶ 22.

On July 24, 2014, Salovitz filed the instant lawsuit in the 53rd Judicial District of Travis County, Texas, alleging "Defendant has denied Plaintiff and others similarly situated, because of their disability, the opportunity to participate in or benefit from a good, service, facility, or accommodation that is equal to that afforded other individuals, thus violating Chapter 121" of the Texas Human Resources Code.  *See* Plaintiff's Original Petition (Dkt. No. 1-2).  Plaintiff seeks declaratory and injunctive relief, along with actual and statutory damages under § 121.004(b) of the Texas Human Resources Code, and costs and attorney's fees.

On August 28, 2014, Uber removed this case to federal court on the bases of federal question jurisdiction under 28 U.S.C. §§ 1441 and diversity jurisdiction under 28 U.S.C. §1332.  Uber contends that this Court has jurisdiction over this lawsuit because Salovitz's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*  In addition, Uber contends that the Court has diversity jurisdiction because the parties are citizens of different states, and the amount in controversy exceeds $75,000.  In response to the Notice of Removal, Salovitz filed the instant Motion to Remand, requesting that the Court remand this case to state court. Salovitz argues that removal was improper because he has not alleged a federal claim, and the amount in controversy does not exceed $75,000.

## II.  STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction having only the authority endowed by the Constitution and that conferred by Congress.  *United States v. Hazlewood*, 526 F.3d 862, 864 (5th Cir. 2008).  Federal removal statutes allow for removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Federal courts have original jurisdiction where there is the existence of a federal question, see 28 U.S.C. § 1331, and where there is complete diversity of citizenship among the parties. See 28 U.S.C. § 1332.  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).  Jurisdictional facts are determined at the time of removal, and post-removal events do not affect that properly established jurisdiction. *Louisiana v. American Nat. Property Cas. Co.*, 746 F.3d 633, 636 (5th Cir. 2014).  "The party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). "Any ambiguities are construed against removal and in favor of remand to state court." *Id.*

### III.  ANALYSIS

**A.      Federal Question Jurisdiction**

28 U.S.C. § 1331 vests federal district courts with jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  To determine whether a case "arises under" federal law, the court must apply the "'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*; *see also, Anderson v. American Airlines, Inc,* 2 F.3d 590, 593 (5th Cir. 1993) ("It is axiomatic that the plaintiff is the master of his or her complaint.").  "A federal question 'is presented' when the complaint invokes federal law as the basis for relief.  It does not suffice that the facts alleged in support of an asserted state-law claim would also support a federal claim." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 12 (2003).

Salovitz insists that he has only pled state law causes of action, and has not pled any claims under federal law.  Under his "Statement of Claim" in his Original Petition, Salovitz only refers to state law, not federal.  Specifically, Salovitz alleges:

> Because Defendant denied Mr. Salovitz the ability to use and enjoy its services and failed to provide accessible cabs or equivalent transportation service, he brings this action against Defendant for violations of his rights under Chapter 121 of the Texas Human Resources Code ("Chapter 121"), Tex. Hum. Res. Code §§121.001 et seq. Plaintiff seeks declaratory and injunctive relief along with actual and statutory damages pursuant to Tex. Hum. Res. Code §121.004(b), and costs and reasonable and necessary attorney's fees, as are equitable and just.

Dkt. No. 1-2 at ¶ 1.  Similarly, under the "Causes of Action" section of his Petition, Salovitz has only pled claims under Chapter 121 of the Texas Human Resources Code.  *Id*. at ¶¶ 19-26.  For example, Salovitz alleges that "[b]y refusing to provide access to its transportation service or a way to call an

4

accessible vehicle, Defendant has refused to accept as passengers people with disabilities who use wheelchairs like Mr. Salovitz, in flagrant violation of the above provision of Chapter 121." *Id.* at ¶ 22. Salovitz further alleges that:

> Defendant has failed to reasonably accommodate people with disabilities in its "policies, practices, and procedures"by doing nothing to provide accessible service, failing to provide accessible vehicles, and failing to provide a way to request an accessible vehicle in its transportation service, in further violation of the above provisions of Chapter 121. People with disabilities like Mr. Salovitz are denied the same rights as able-bodied patrons of Uber Technologies Inc. in violation of Chapter 121. Tex. Hum. Res. Code §121.003(a).

*Id.* at ¶ 23.

While Salovitz's Petition only alleges violations of Chapter 121 of the Human Resources Code under the "Causes of Action" section, he *does* refer to "the ADA" in the "Injunctive Relief" and "Prayer for Relief" sections. Specifically, the Petition states that "Mr. Salovitz further requests injunctive relief because, absent an injunction, Defendant will continue to refuse to comply with Title III of the ADA and Chapter 121." Dkt. No. 1-2 at ¶ 29. In addition, the Prayer for Relief mentions the ADA three times, although it does not refer to any specific section of the statute. *Id.* at pp. 7-8. Uber's Notice of Removal points to the above-references to the ADA in support of its argument that the Court has original subject matter over this action under 28 U.S.C. § 1331. Salovitz insists that the references to the ADA were inadvertently included in the Petition and should have been deleted during the editing process. Salovitz contends that "[t]he ADA reference is clearly spurious and surfeit language inconsistent with the rest of the pleading, and should have been edited out but was inadvertently missed in the editing process." Dkt. No. 6 at 3. Joseph Berra, Plaintiff's attorney, has provided the Court with a sworn declaration explaining the following:

> I personally supervised and directed the law clerks working on the investigation and preparation of this case, and reviewed, edited and filed Plaintiff's Original Petition in Travis County District Court. In the course of editing the petition for filing, I inadvertently failed to delete language spuriously referring to "Title III of the ADA"

5

> and "the ADA" in paragraph 29 and paragraphs A, B, and D of the final section of the petition labeled "Prayer for Relief."
>
> \* \* \*
>
> The intention upon filing was to base Plaintiff's petition solely on causes of action under Chapter 121 of the Texas Human Resources Code, as detailed in the sections of the petition labeled "Statement of the Case" and "Causes of Action."

Dec. of Joseph Berra, Dkt. No. 6-1. Salovitz has also filed an Amended Petition removing any reference to the ADA. *See* Dkt. No. 5.

While Salovitz's inadvertent references to the ADA have created confusion as to whether federal jurisdiction exists, Salovitz is "the master of his complaint" and a fair reading of the Petition and subsequent evidence shows that any reference to the ADA was a clerical error. First, Salovitz only referenced the ADA claim in the Injunctive Relief and Prayer for Relief sections, as opposed to the state law claims which were repeatedly referenced throughout the Petition. *See Citigroup, Inc. v. Wachovia Corp.,* 613 F. Supp.2d 485, 493 (S.D.N.Y. 2009) (finding that reference to EESA was a typographical error where it was only referenced in prayer for relief). In addition, the acronym "ADA" was never defined in the pleading and no reference to a specific section of the statute was mentioned, suggesting that the reference was "cut and pasted" from a different document. *See Jackson v. Prime Motors, Inc.,* 2011 WL 1883806, at *4 (E.D. Pa. May 18, 2011) (finding that reference to FDCPA was a clerical error due in part because it was not defined and appeared to be pasted in document). In addition, the declaration of Salovitz's attorney removes any ambiguity as to whether Salovitz was asserting an ADA claim in his Petition since he has explained that the references to the ADA were clerical errors. While post-removal events cannot deprive the court of jurisdiction once it has attached, courts have allowed consideration of post-removal affidavits that clarify any ambiguity regarding jurisdiction. *See Asociacion Nacional De Pescadores v. Doe Quimica*, 988 F.2d 559, 565 (5th Cir. 1993) (considered affidavits since "in this case the affidavits clarify a petition that previously left the

jurisdictional question ambiguous."), *abrogated on other grounds*, *Marathon Oil Co. v. A.G. Ruhrgas*, 145 F.3d 211 (5th Cir.1998); *Dixon v. Alcatel USA, Inc.*, 2000 WL 193620, at * 2 (N.D. Tex. Feb. 16, 2000) (considering attorney's affidavit to find that reference to ADA was merely a clerical error).

Based upon the foregoing, the Court finds that the reference to the ADA in Salovitz's Petition was a clerical mistake and, therefore, no federal question has been implicated in this case. As the Seventh Circuit has stated, "[t]his case should not come to federal court if the only ground for jurisdiction is a clerical error, however careless." *Schillinger v. Union Pacific R. Co.*, 425 F.3d 330, 333 (7th Cir. 2005) (noting that it would have been proper for the district court to permit amendment to correct a clerical mistake regarding jurisdiction in the original complaint). *See also*, *Perez v. Del Monte Fresh Produce N.A., Inc.,* 2012 WL 2872398, at * 14 (D. Or. April 18, 2012) (noting that "it is within the court's discretion to remand a case that has been removed based on a scrivener's error."); *Jackson,* 2011 WL 1883806 at *4 ("It would defy common sense to exercise jurisdiction because [plaintiff]'s counsel accidentally referenced a federal statute"); *Citigroup, Inc.,* 613 F. Supp.2d at 493 ("The Court will not base subject matter jurisdiction on a typographical error"). Accordingly, removal of the case on federal question grounds was not proper.

**B.     Diversity Jurisdiction**

Federal courts may properly exercise jurisdiction on the basis of diversity of citizenship after removal only if (1) the parties are of completely diverse citizenship, and (2) the case involves an amount in controversy of more than $75,000. 28 U.S.C. § 1332(a). The Parties agree that there is complete diversity of citizenship in this case, but dispute whether the amount in controversy is more than $75,000.

The amount in controversy is determined by the amount sought on the face of the plaintiff's pleadings, so long as the plaintiff's claim is made in good faith. *St. Paul Reinsurance Co. v.*

*Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.), *cert. denied*, 47 F.3d 1404(1995). Removal is thus proper if it is "facially apparent" from the complaint that the claim or claims asserted exceed the jurisdictional amount. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In a removal case, when the complaint does not state a specific amount of damages, the defendant must establish by a preponderance of the evidence that "the amount in controversy exceeds the jurisdictional amount." *St. Paul Reinsurance*, 134 F.3d at 1253. "The preponderance burden forces the defendant to do more than point to a state law that *might* allow the plaintiff to recover more than what is pled. The defendant must produce evidence that establishes that the actual amount of the claim exceeds [the jurisdictional amount]." *De Aguilar*, 47 F.3d at 1412 (emphasis in original). The test to be used by the district court is whether it "is more likely than not" that the amount of the claim will exceed the jurisdictional amount. *Allen*, 63 F.3d at 1336. As the Fifth Circuit has stated, "[t]he district court must first examine the complaint to determine whether it is 'facially apparent' that the claims exceed the jurisdictional amount. If it is not thus apparent, the court may rely on 'summary judgment-type' evidence to ascertain the amount in controversy." *St. Paul Reinsurance*, 134 F.3d at 1253 (footnotes omitted). If a defendant fails to establish the requisite jurisdictional amount, the court must remand the case to state court. If a defendant establishes that the jurisdictional amount has been met, remand is appropriate only if a plaintiff can establish that it is "legally certain that his recovery will not exceed" the jurisdictional threshold. *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 387–88 (5th Cir. 2009).

In Uber's Notice of Removal, Uber contends "it is facially apparent from Plaintiff's Petition that he seeks damages in excess of the $75,000.00 threshold." Notice of Removal at p. 3. Uber points to the "Relief Requested" section of Salovitz's Original Petition which states that "[p]ursuant to Texas Rule of Civil Procedure 47(c)(2), Plaintiff seeks monetary relief of $100,000 or less..."

Original Petition at ¶ 29.  Uber is mistaken.  Salovitz's reference to "$100,000 or less" merely conforms to Texas Rule of Civil Procedure 47, which requires plaintiffs to select one of five prescribed claims for relief and does not represent a request for a specific dollar amount of damages. *See* Tex. R. Civ. P. 47(c).  "Furthermore, because it requires plaintiffs to state their damage requests in the form of these prescribed, broad ranges, that provision effectively preclude[s] plaintiffs from requesting specific damage amounts." *Oliver v. CitiMortgage, Inc.*, 2014 WL 285218, at *3 (N.D. Tex. Jan. 27, 2014).  Therefore, this provision does not alone establish, by a preponderance of the evidence, that the amount in controversy satisfies the jurisdictional minimum. *Id.*

In addition to seeking "monetary relief of $100,000 or less," Salovitz's Original Petition seeks statutory damages "of at least $300" under § 121.004(b) of the Texas Human Resource Code.  Dkt. No. 1-2 at ¶ 31.  Clearly this does not reach the minium jurisdictional amount.  In addition to statutory damages, Salovitz is also seeking non-monetary relief in the form of declaratory relief, injunctive relief and attorneys' fees. *Id.* at ¶ 27.  "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Commn*, 432 U.S. 333, 347 (1977).  As the Fifth Circuit has explained, "the amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented." *Farkas v. GMAC Mortgage, L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013), *cert. denied*, 2014 WL 3890319 (2014) (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir.1983)).

Uber contends that if the requested injunctive relief in this case were granted, then it would have to modify the Uber App, modify its policies and procedures, and provide wheelchair accessible vehicles in numerous cities which would cause "the  cost of compliance" to be "extraordinary," and exceed the jurisdictional amount.  Response, Dkt. No. 7 at 9.  This measures the amount in

controversy from the wrong perspective, however, as it is be measured from the point of view of the plaintiff.  *See Garcia v. Koch Oil Co.*, 351 F.3d 636, 640 n. 4 (5th Cir. 2003).  Accordingly, the costs that Uber would incur in complying with an injunction should not be considered in calculating the amount in controversy in this case.  *Id.* at 640 (costs that defendant would incur in performing equitable accounting could not be considered in determining amount of controversy because costs were collateral to the true object of the litigation: payment of restitution damages to plaintiffs); *Sumrall v. Deserio*, 2006 WL 852344 at *3 (E.D. La. March 23, 2006) (rejecting defendants' position that the amount in controversy should be determined by the value of defendants' harm which would result if defendants did not comply with the injunction).

Uber also contends that the fact that Salovitz is seeking attorney's fees in this case raises the amount in controversy above $75,000.  While statutory attorney's fees may be included in the amount in controversy, *H&D Tire and Automotive-Hardware*, *Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 330 (5th Cir. 2000), Uber has failed to demonstrate by a preponderance of the evidence that the amount of attorney's fees would exceed $75,000 in this case.[1]

Based upon the foregoing, the Court finds that Uber has failed to demonstrate by a preponderance of the evidence that the amount in controversy in this case exceeds the jurisdictional amount.  *See De Aguilar*, 47 F.3d at 1412.  Accordingly, the Court recommends that the District Judge remand this case to the state court where it was originally filed.

## IV.  RECOMMENDATION

The undersigned **RECOMMENDS** that the District Judge **GRANT** Plaintiff's Motion to Remand (Dkt. No. 6) and **REMAND** this case to the 53rd Judicial District Court of Travis County.

---

[1] Salovitz has stipulated that he will not seek more than $69,500.00 in attorney's fees. Stipulation, Exh. 1 to Plaintiff's Reply, Dkt. No. 13-1.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 16th day of October, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE